# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ROBIN KNIGHT, derivatively on behalf of Nominal Defendant UNIVERSAL HEALTH SERVICES, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2021-0581-SG |
| ALAN B. MILLER, MARC D. MILLER, STEVE G. FILTON, LAWRENCE S. GIBBS, EILEEN C. McDONNELL, WARREN J. NIMETZ, MARVIN G. PEMBER, MATTHEW J. PETERSON, MARIA SINGER, and ELLIOT J. SUSSMAN, | ) ) ) ) ) ) ) ) ) | |
| Defendants, and | ) ) ) | |
| UNIVERSAL HEALTH SERVICES, INC., | ) ) | |
| Nominal Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted:  January 24, 2022
Date Decided:  April 27, 2022

Stephen E. Jenkins and Tiffany Geyer Lydon, of ASHBY & GEDDES, P.A., Wilmington, Delaware; OF COUNSEL: Gregory Mark Nespole, Daniel Tepper, Correy A. Kamin, and Ryan C. Messina, of LEVI & KORSINSKY, LLP, New York, New York, *Attorneys for Plaintiff Robin Knight.*

Francis G.X. Pileggi and Cheneise V. Wright, of LEWIS BRISBOIS BISGAARD & SMITH LLP, Wilmington, Delaware; OF COUNSEL: Gary A. Orseck, Matthew M. Madden, and Jason A. Shaffer, of KRAMER LEVIN ROBBINS RUSSELL, Washington, D.C., *Attorneys for Defendants Alan Miller, Marc Miller, Steve Filton, Lawrence Gibbs, Eileen McDonnell, Warren Nimetz, Marvin Pember, Matthew Peterson, Maria Singer, and Elliot Sussman, and Nominal Defendant Universal Health Services, Inc.*

**GLASSCOCK, Vice Chancellor**

The oft-noted fact that corporate actions are "twice-tested"[1]—first in light of compliance with the DGCL, second for compliance with fiduciary duties—is neatly illustrated by directors' actions to set their own compensation. Those actions are clearly authorized by statute, and just as clearly an act of self-dealing, subject to entire fairness review. This case is another bloom on the hardy perennial of director compensation litigation. The Plaintiff is a stockholder, challenging option awards granted by certain Defendant corporate directors. The matter is before me on a motion to dismiss.

Here, among the Defendants are directors serving on a compensation committee, who awarded themselves stock options based on a market price determined as of what the Plaintiff stockholder characterizes as an obvious dip in the market. Why this dip would have been "obvious" to the Defendant directors, but not to the market itself, is not entirely clear in the complaint. Nonetheless, the standard is entire fairness, and the Plaintiff has cleared the low hurdle of pleading sufficient facts to make it plausible[2] that the price and process of the option awards transaction were not entirely fair. The Plaintiff pleads unjust enrichment against the option recipients in light of the allegations of breach of the duty of loyalty; this claim also survives.

---

[1] *In re Investors Bancorp, Inc. S'holder Litig.*, 177 A.3d 1208, 1222 (Del. 2017) (citation omitted).
[2] By which term I mean "reasonably conceivable." *See Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 431 (Del. 2011).

The Plaintiff also contends that the recipients of the awards, including non-compensation committee directors and corporate officers, breached fiduciary duties in *accepting* the awards, and that the awards themselves amount to corporate waste. These allegations, I find, do not state a claim. My reasoning is set out below.

## I. BACKGROUND

The instant action deals with grants of equity compensation made to directors and officers of Universal Health Services, Inc. ("UHS" or the "Company") during the market volatility taking place in March 2020. As a sentient reader may remember, the novel coronavirus, or COVID-19, became a worldwide concern in March 2020. The market reacted to the emergence of the pandemic and to proposed government relief packages in quick succession. At the same time, UHS prepared to make its yearly equity compensation grants to its directors and officers at a pre-planned meeting, aided by the assistance of its compensation consultant. The grants were made—and the strike price set—on the same day that UHS stock hit its lowest point during the pandemic.

The Plaintiff, a UHS stockholder, challenges the grants, pleading two breach of fiduciary duty claims, an unjust enrichment claim, and a corporate waste claim. The Defendants—which comprise nominal defendant UHS and various UHS directors and officers—move to dismiss, largely on basis of a fair process and a fair price. I address the motion following a recitation of the pertinent facts, below.

3

*A. Factual Overview*[3]

### 1. The Parties

Plaintiff Robin Knight (the "Plaintiff") is a common stockholder in the Company.[4]

Nominal Defendant UHS is a Delaware corporation in the healthcare industry.[5]

The defendants in this action have made a singular motion to dismiss (the "Motion to Dismiss"),[6] though the defendants can be categorized into officer defendants and director defendants generally. The officer defendants include Steve Filton, the Company's CFO; Marvin Pember, President of the Company's acute care division; and Matthew Peterson, President of the Company's behavioral health division (together, the "Officer Defendants").[7] The director defendants include Alan Miller, a director and the Chairman of the Company's board of directors (the "Board");[8] Marc Miller, a director, the CEO, and the Company's overall President;[9]

---

[3] Unless otherwise specified, the facts in this section are drawn from the verified stockholder derivative complaint or its incorporated documents (the "Complaint"). Verified Stockholder Derivative Compl., Dkt. No. 1 [hereinafter "Compl."]. The Complaint expressly incorporated documents produced by the Company in response to the Plaintiff's Section 220 inspection demand. Compl. at 2. I consider the facts to be true as pled in the Complaint, in accordance with the applicable standard on a motion to dismiss. This section therefore does not constitute formal findings of fact.

[4] *Id.* ¶ 6.

[5] *Id.* ¶¶ 7, 1.

[6] *See* Defs.' Mot. to Dismiss the Verified Stockholder Derivative Compl., Dkt. No. 19.

[7] Compl. ¶¶ 23–26.

[8] *Id.* ¶ 13.

[9] *See id.* ¶¶ 14, 16.

Lawrence Gibbs; Eileen McDonnell; Warren Nimetz; Maria Singer; and Elliot Sussman (the "Director Defendants," and, together with the Officer Defendants, the "Defendants").[10]

This Memorandum Opinion refers to defendants Gibbs, McDonnell, Nimetz, Singer, and Sussman as the "Outside Director Defendants" at times.

Alan and Marc Miller are also the Company's controllers, together holding 87.6% of the Company's voting power per the Company's 2021 proxy statement.[11] This Memorandum Opinion refers to Alan and Marc Miller in certain instances as the "Controller Defendants."

Alan Miller is also affiliated with the Federation of American Hospitals ("FAH"), a lobbying group of for-profit hospitals and health systems.[12] FAH lobbied Congress to pass relief bills associated with the novel coronavirus in the first quarter of 2020.[13]

Finally, the Board's compensation committee (the "Compensation Committee") consists of Gibbs, McDonnell, and Sussman (together, the "Compensation Committee Defendants").[14] The Compensation Committee is governed by its charter, which outlines among other things the duty of its members

---

[10] *Id.* ¶¶ 17–21.
[11] *Id.* ¶ 15.
[12] *Id.* ¶ 56.
[13] *Id.*
[14] *Id.* ¶¶ 17, 18, 21.

to determine the form and amount of compensation of the non-management members of the Board.[15]

## 2. COVID-19 and its Effects on the Market and the Company

The occurrence of the COVID-19 pandemic in March 2020 is integral to the allegations at bar. COVID-19 had wide-ranging effects on the market, particularly in March 2020, when it first emerged on a global scale.[16] UHS was no exception.[17]

From December 2019 to February 2020, the Company's stock price was fairly stable; it traded between $123.74 and $147.78 per share.[18] From February to March 2020, however, UHS saw its stock price drop by over 50%.[19] UHS stock reached its lowest point on March 18, 2020, closing at $67.69 per share.[20] This was the lowest closing price for UHS stock since September 2013.[21]

On March 6, 2020, the federal government enacted its first-phase coronavirus relief legislation.[22] This "Phase 1" provided over $8 billion for vaccine development and public health funding.[23] Phase 2 followed shortly after on March 18.[24] While Phase 2 was being considered in Congress, the media began reporting on an

---

[15] *Id.* ¶ 89.
[16] *See id.* ¶¶ 29–37.
[17] *See id.*
[18] *Id.* ¶ 28.
[19] *See id.* ¶ 2.
[20] *Id.* ¶ 35.
[21] *See id.*
[22] *Id.* ¶ 39.
[23] *Id.*
[24] *Id.* ¶ 52.

anticipated third round of legislation.[25]  Phase 3 of federal coronavirus relief was

signed into law on March 27.[26]

By March 30, 2020, the Company's stock price had rebounded to a closing

price of $100.13 per share.[27]

On March 12, 2020[28]—after Phase 1 of federal coronavirus relief, but before

Phase 2 of federal coronavirus relief—the Company's CFO, Filton, attended a

healthcare conference and answered questions from analysts.[29]  When asked whether

the Company would continue its share repurchase plan in 2020, Filton noted that the

planned buyback program had been established before the rise of COVID-19, which

had "changed [things] dramatically," but that the Company still had a "point of view

right now that the earnings power of our business has changed very little in the last

month or 6 weeks," even though the market valuation had declined precipitously.[30]

Filton went on to say that the Company

> certainly view[ed] the current situation as a buying
> opportunity.  But also, we acknowledge that this is a pretty
> uncertain period.  So we'll continue to evaluate how this

---

[25] *See, e.g.*, *id.* ¶¶ 41, 45–50.
[26] *Id.* ¶ 53.
[27] *Id.* ¶ 75.
[28] The Plaintiff has not pled what time of day Filton spoke with analysts, though she references the closing price of the Company's stock on March 12, 2020 ($99.80 per share). *See id.* ¶ 64.  If the speech were given during the day on March 12, the more appropriate closing price would have likely been that of March 11, 2020.  I assume, given the procedural posture before me, that the named stock price is at least informative of Filton's statements, despite the tumult of the stock market in March 2020.
[29] *Id.* ¶ 63.
[30] *Id.*

plays out . . . . But I think in our minds, if anything, it has created more of a buying opportunity for us.[31]

On that same day, March 12, at least one independent analyst following UHS set a year-end 2020 price target for UHS of $127, using a model that purportedly incorporated the effects of COVID-19.[32] How such a model was possible (or accurate) this early in the development of the pandemic is not explained in the Plaintiff's complaint (the "Complaint").

### 3. The Equity Award Grants

#### a. Background to the March 2020 Compensation Committee Meeting

The Complaint is silent on the historical practice with respect to UHS's equity compensation grants. The Complaint does state that books and records obtained from the Company in response to a Section 220 demand "are expressly incorporated into this Complaint."[33] The Defendants attach a number of exhibits to their opening brief in support of the Motion to Dismiss which are identified as Section 220 books and records.[34] Of the Section 220 exhibits, only one provides information pertinent to the *scheduling* of the March 2020 meeting—Exhibit D, an email sent September 4, 2019 identifying the UHS Board Meeting Dates for 2020.[35] From this one can

---

[31] *Id.* ¶ 64.

[32] *Id.* ¶ 65.

[33] *Id.* at 2.

[34] *See* Opening Br. Supp. Defs.' Mot. to Dismiss the Verified Stockholder Derivative Compl. 5 n.1, Dkt. No. 20 [hereinafter "OB"].

[35] OB, at Ex. D.

glean that the March 18, 2020 Board meeting date was set at least six months in advance; that is, as the Defendants point out, the timing was likely not driven by the effect of the pandemic on stock price.

The Defendants attached a number of public Securities & Exchange Commission ("SEC") filings as exhibits as well.[36] I can "take judicial notice of the contents of an SEC filing, but only to the extent that the facts contained in them are not subject to reasonable dispute."[37] One of the SEC filings contains the Company's stock incentive plan (the "Stock Incentive Plan").[38] This fact, and facts regarding the contents of the Stock Incentive Plan, are not subject to reasonable dispute, and at any rate, the Plaintiff has not disputed them in filing her answering brief. As such, I take judicial notice of the Stock Incentive Plan and its contents for the purposes of this Memorandum Opinion.

One other fact pertinent but not pled in the Complaint is the history of dates on which the Compensation Committee met to grant equity awards. The Defendants stated in their opening brief that the Company's stock option grants, since 2014, have almost always been made at a meeting held in March, except for one meeting held in April.[39] The Plaintiff did not dispute this fact in answering the Motion to

---

[36] *See, e.g.*, OB 5 n.1; *see also id.* at Exs. A, B, C, H, I, J, and K.

[37] *MicroStrategy Inc. v. Acacia Rsch. Corp.*, 2010 WL 5550455, at *4 (Del. Ch. Dec. 30, 2010).

[38] OB, at Ex. C [such exhibit hereinafter "SIP"]. I note that the exhibit produced to the Court appears to have some typographical errors (missing punctuation, extra spacing, missing numbers). Luckily, the exhibit is publicly available for review.

[39] OB 8–9, 9 n.3.

Dismiss—in fact, she quoted the language in her answering brief for the proposition that the Compensation Committee treated the option grant process as though 2020 "were any other normal year when it manifestly was not."[40]  Thus, although not pled in the Complaint, the Plaintiff has conceded the pertinent meetings were generally held in March or April.

With this historical context established, I turn to the challenged March 2020 grants.

### b. March 2020

The Compensation Committee met on March 18, 2020, prior to market open, to make equity compensation grants.[41]  The Compensation Committee was joined by director Nimetz, a non-independent director, at the Compensation Committee's invitation.[42]  The Company's compensation consultants also attended the meeting and delivered a presentation, including a final recommendation with respect to the equity grants and comparisons to the Company's "peer group."[43]

---

[40] Pl.'s Answering Br. Opp'n Defs.' Mot. to Dismiss the Verified Stockholder Derivative Compl. 8, Dkt. No. 24 [hereinafter "AB"].
[41] Compl. ¶¶ 68, 71.  The Compensation Committee meeting minutes from March 18, 2020 were part of the exhibits furnished by the Defendants as Section 220 books and records.  *See* OB 5 n.1. Because the Complaint expressly incorporated these documents, I consider the meeting minutes in the following discussion.
[42] Compl. ¶ 69; OB, at Ex. F (Compensation Committee meeting minutes from March 18, 2020).
[43] *See* Compl. ¶¶ 70, 77; OB, at Ex. F.

Defendants Alan Miller and Filton then entered the meeting, and the members discussed proposed performance bonuses for executive officers.[44] The Compensation Committee then "decided to defer any discussion or approval of the specific bonus formulae . . . for the Company's executive officers [in fiscal year 2020] given the significant uncertainties created by the recent emergence of the Covid-19 crisis."[45]

The Compensation Committee then turned to discussion of recommended options, presumably still in the presence of Nimetz and Alan Miller.[46] The Compensation Committee "reviewed the previously distributed recommendations of management as to the grant of stock options and 'premium priced' stock options to the senior executives," among other proposed grants.[47] The committee members then adopted a resolution to grant the options (the "March 2020 Awards").[48] The resolution adopted by the Compensation Committee purports to specify the closing sale price of the common stock as the strike price of the stock options, though it would not be determined until later that day.[49]

---

[44] Compl. ¶ 70; OB, at Ex. F.
[45] *Id.*
[46] This inference goes in favor of the Plaintiff, for although the meeting minutes do not specify that Nimetz and Miller remained in the room, they also fail to specify that Nimetz and Miller *left*. *See* Compl. ¶ 71; OB, at Ex. F. And of some note, the minutes *did* specify when the compensation consultants left the meeting. *Id.*
[47] *Id.*
[48] *Id.*
[49] *Id.* ("RESOLVED, that stock options be and hereby are granted . . . and such Stock Options shall (i) have an exercise price per share equal to the closing sale price of UHS Class B common stock

11

The Complaint avers that by March 30, 2020, Phase 3 of the federal coronavirus relief had been enacted, and the Company saw a dramatic improvement in its stock price comparative to that of March 18.[50]  The closing price of UHS common stock on March 30 was $100.13 per share, as opposed to the closing price on March 18 of $67.69 per share.[51]

*B. Procedural History*

The Complaint in this action was filed on July 7, 2021.[52]  The Defendants moved to dismiss on September 3, 2021.[53]  Following briefing,[54] I heard oral argument on the Motion to Dismiss on January 24, 2022.

## II. ANALYSIS

The Plaintiff presses four separate causes of action: (1) a breach of fiduciary duty claim against the Compensation Committee Defendants for granting the March 2020 Awards; (2) a breach of fiduciary duty claim against all Defendants for accepting the March 2020 Awards; (3) a corporate waste claim against the Compensation Committee Defendants for granting the March 2020 Awards; and (4)

---

on March 18, 2020 []of $67.69 for the market priced stock options . . . ."). Presumably, the resolution was adopted sans parenthetical, which was added in later as the minutes were finalized. This matter has some limited import, however, as the Compensation Committee Defendants argue that the market had eight hours to react to the news of the grants. Reply Supp. Defs.' Mot. to Dismiss the Verified Stockholder Derivative Compl. 19 n.5, Dkt. No. 27 [hereinafter "RB"].

[50] Compl. ¶ 75.

[51] *Id.*

[52] *See* Compl.

[53] Defs.' Mot. to Dismiss the Verified Stockholder Derivative Compl., Dkt. No. 19.

[54] *See* OB; AB; RB.

an unjust enrichment claim against all Defendants for accepting the March 2020 Awards.[55]

The Motion to Dismiss seeks dismissal of all four causes of action for failure to state a claim.[56] The familiar standard for motions to dismiss applies.[57] Dismissal of any of the causes of action will be inappropriate unless the Plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[58] The Plaintiff is entitled to all reasonable inferences in her favor.[59]

Given its implications with respect to the remaining claims, I begin my analysis by addressing the corporate waste claim first.

*A. The Corporate Waste Claim*

The Plaintiff brings a corporate waste claim against the Compensation Committee Defendants for granting the March 2020 Awards.[60]

A showing of corporate waste with regard to a transaction requires more than a demonstration that the transaction was costly to the company, badly conceived, or inefficient and improvidently entered. It requires a showing that the fiduciaries

---

[55] *See* Compl. ¶¶ 114–28.

[56] Defs.' Mot. to Dismiss the Verified Stockholder Derivative Compl., Dkt. No. 19.

[57] This is a derivative action; nonetheless, the Defendants have not sought dismissal under Chancery Court Rule 23.1. The Complaint alleges demand was excused, plausibly so given the self-interested nature of some of the transactions. *See* Compl. ¶¶ 104–13.

[58] *Stein v. Blankfein*, 2019 WL 2323790, at *8 (Del. Ch. May 31, 2019).

[59] *Id.*

[60] Compl. ¶¶ 119–21.

knowingly entered a transaction of virtually no value to the corporation. To withstand a motion to dismiss, it must be reasonably conceivable from the pleadings that the directors authorized an exchange that was "so one sided that no business person of ordinary, sound judgment" could conclude that the corporation received sufficient consideration.[61] Put differently, the corporation must have essentially made a "gift" to the recipient of corporate assets,[62] a gift that returned nothing in terms of incentives or goodwill. A successful waste claim will lie where directors "approve a decision that cannot be attributed to 'any rational business purpose.'"[63] In this sense, it is a close kin to a claim of bad faith.

Even according the Plaintiff the benefit of all inferences, the corporate waste cause of action must be dismissed for failure to state a claim. As the Complaint itself acknowledges, the March 2020 Awards formed "equity compensation" for their recipients.[64] The Compensation Committee's charter clarifies that the Compensation Committee is to "[r]eview and determine the form and amount of compensation of the non-management members of the Board, including cash, *equity-based awards and other compensation*" and to "review and approve the granting of options in accordance with [performance targets.]"[65] Thus, the March 2020 Awards

---

[61] *Glazer v. Zapata Corp.*, 658 A.2d 176, 183 (Del. Ch. 1993).
[62] *See Calma ex rel. Citrix Sys., Inc. v. Templeton*, 114 A.3d 563, 590 (Del. Ch. 2015).
[63] *Id.* (quoting *Sinclair Oil Corp. v. Levien,* 280 A.2d 717, 720 (Del. 1971)).
[64] *See* Compl. ¶ 79.
[65] *Id.* ¶ 89. The Stock Incentive Plan also supports this finding, as the "Purpose" section describes the awards made under the plan as "equity-based compensation incentives to key personnel of the

were not donative in nature but part of a formula of compensation for the work of Company officers and directors.

The Plaintiff alleges that the compensation paid to the Defendants was "excessive on its face,"[66] but this statement is conclusory and, to my mind, inapt. The compensation awarded, even if "excessive," clearly had a business purpose.[67] I note also that if the March 2020 Awards appear excessive, that view is benefitted by hindsight. At the time of granting, as the Complaint notes, the March 2020 Awards had a strike price equivalent to the closing price established later that day.[68]

In order to constitute waste, the grants must be without business purpose. Based on the allegations, the cause of action is insufficiently pled. The claim for corporate waste must be dismissed.

*B. The Breach of Fiduciary Duty Claims*

The Plaintiff has pled two distinct breach of fiduciary duty claims. The first is aimed at the Compensation Committee Defendants for breach of fiduciary duty in granting the March 2020 Awards. The second is directed at all Defendants and posits a breach of fiduciary duty for *accepting* the March 2020 Awards.

---

Company and its affiliates in order to attract, motivate, reward and retain such personnel and to further align the interests of such personnel with those of the stockholders of the Company." *See* SIP § 1.

[66] Compl. ¶ 81.

[67] *Id.*

[68] *See id.* ¶ 72 (stating that the Compensation Committee granted awards "at strike prices of either the closing price on that day ($67.69) or the closing price plus 10%").

15

The organization of these causes of action requires a somewhat convoluted analysis. The first cause of action implicates, as I discuss below, different standards of review for different grants. The Plaintiff also appears to plead different theories for sustaining a breach of fiduciary duty claim throughout her papers—inviting consideration of the awards under both the garden-variety duty of loyalty, suggesting purely a lack of entire fairness,[69] and under a consideration of the Compensation Committee Defendants' good faith or lack thereof.[70] The Plaintiff asserts that this second theory survives "apart from whether" the March 2020 Awards are subject to entire fairness review.[71]

I first address whether the Plaintiff has stated a claim of breach of duty of loyalty predicated upon bad faith by the Compensation Committee Defendants, because the Plaintiff has, in my understanding, pled that the question of good or bad faith is an independent basis for liability. I then evaluate the breach of duty of loyalty cause of action against the Compensation Committee Defendants for granting the March 2020 Awards more generally. The breach of duty of loyalty against all Defendants for accepting the March 2020 Awards is addressed third.

---

[69] AB 13–30; *see* Compl. ¶¶ 115–17.
[70] AB 32–33; Compl. ¶ 117.
[71] AB 33.

16

## 1. The Plaintiff Has Not Established a Breach of Fiduciary Duty Cause of Action Predicated Upon Bad Faith

The Plaintiff makes a standalone argument that regardless of the applicable standard of review used to assess the March 2020 Awards' grants, a separate breach of fiduciary duty action should lie against the Compensation Committee Defendants due to their alleged bad faith.[72]

Bad faith is among the hardest of corporate claims to maintain. It comes into play, typically, where no other species of the breach of duty of loyalty can be alleged—that is, where the fiduciaries approving a transaction are not themselves interested, and where they do not lack independence from those who are. Bad faith, under Delaware law, can be shown when the director in question engages in an "intentional dereliction of duty" or "conscious disregard for one's responsibilities," or where one acts "with the intent to violate applicable positive law."[73] Scienter is required; the stockholder must allege that the director acted inconsistently with his fiduciary duties "and, most importantly, that the director *knew* he was so acting."[74]

The Plaintiff has not made such a showing here. First, there is no pleading (and correctly so, as it would not be supportable based on these facts) that the

---

[72] *Id.* at 32–33; Compl. ¶ 117.
[73] *City of Birmingham Ret. & Relief Sys. v. Good*, 177 A.3d 47, 55 (Del. 2017) (citations omitted).
[74] *Id.* (citing *In re Massey Energy Co.*, 2011 WL 2176479, at *22 (Del. Ch. May 31, 2011) (emphasis in original)).

Compensation Committee Defendants acted with the intent to violate applicable positive law.

The second standard is also not satisfied. The Plaintiff has attempted to make a showing of scienter, but what she pleads in connection with this cause of action is that the Compensation Committee Defendants consciously disregarded potential circumstances *arising from COVID-19*.[75] There is no allegation that the Compensation Committee Defendants knowingly acted inconsistently with their fiduciary duties. If anything, under the facts pled, the Compensation Committee Defendants, perhaps, would have been wise to take into account external factors, such as the macroeconomic effects of COVID-19 and the government's reaction thereto, in making their determination to grant awards on March 18. That is the Plaintiff's hindsight theory. But nothing in the pleadings indicates that the Compensation Committee Defendants knowingly acted against the corporate interest, or saw a duty to act or to refrain from acting, but refused.

The Plaintiff also puts forth a one-paragraph argument that the Compensation Committee Defendants failed to disclose in the Company's proxy statement for 2021 that the March 2020 Awards were issued without the Compensation Committee having "considered the foregoing" (apparently the macroeconomic effects of

---

[75] AB 32 ("[The] members of the Compensation Committee . . . granted the March 2020 Awards in conscious disregard of matters ranging from merely material to world historic.").

COVID-19, though this is unclear from the briefing).[76] The Plaintiff appears to posit that this failure to disclose is *itself* another ground for a breach of the duty of loyalty. This cause of action, if such it is, is missing from the Complaint.[77] To the extent not waived, this cause of action fails to state a claim. Directors are required to provide stockholders with "accurate and complete information material to a transaction or other corporate event that is being presented to them for action."[78] The Plaintiff has not pled that the 2021 proxy statement requested stockholders to take any action in connection with the March 2020 Awards and therefore cannot establish liability for insufficient disclosure.[79]

Altogether, the Plaintiff has not made out a standalone basis for liability based on bad faith or inadequate disclosure.

---

[76] *Id.* at 33.

[77] The only reference in the Complaint close to addressing a disclosure claim is the mention of the Compensation Committee Defendants owing "the fiduciary duties of good faith, loyalty, and *candor*." Compl. ¶ 115 (emphasis added).

[78] *Malone v. Brincat*, 722 A.2d 5, 10 (Del. 1998).

[79] The Plaintiff's citations are also unavailing to her. She cites *Weiss v. Swanson*, 948 A.2d 433 (Del. Ch. Mar. 7, 2008), for the proposition that shareholders have a right to the full truth as relates to executive compensation, and therefore directors have a duty to disclose all material information. *Id.* at 442. This is true. But the context of *Weiss,* and *Tyson Foods*, upon which *Weiss* relies, differs because the stockholders had been asked in both instances to approve the incentive plan by which the equity awards were being made. *See generally id.* ("There is no dispute that the challenged options were granted pursuant to stockholder-approved option plans."); *see also In re Tyson Foods, Inc. Consol. S'holder Litig.*, 919 A.2d 563, 593 (Del. Ch. 2007). Here, the Plaintiff has not pled that the stockholders had been asked to vote upon the March 2020 Awards or otherwise ratify the Compensation Committee's actions.

### 2. The Duty of Loyalty Cause of Action Against the Compensation Committee Defendants for Granting the March 2020 Awards

Section 141(h) of the Delaware General Corporation Law (the "DGCL") authorizes the board to "fix the compensation of directors."[80] UHS's Stock Incentive Plan is one method of compensating directors and officers for services to the Company.[81] The Stock Incentive Plan vests the Compensation Committee with the authority, "acting in its discretion," to "select the persons to whom Awards shall be made, [and] prescribe the terms and conditions of each Award and make amendments thereto."[82] The Compensation Committee meeting minutes imply that only the Compensation Committee Defendants voted to approve the awards in question here.[83]

The Compensation Committee granted the March 2020 Awards to individuals in varying factual postures. Because of this, different standards of review will apply to the Compensation Committee Defendants' choices in making the grants. "As in nearly all pleadings stage challenges to the viability of a breach of fiduciary duty claim in the corporate context, deciding the proper standard of review . . . will be

---

[80] 8 *Del. C.* § 141(h).
[81] *See* SIP § 1.
[82] *Id.* § 4(b).
[83] *See, e.g.*, OB, at Ex. F ("The Committee discussed the proposed grants and after a review of the value of the options and the number of options outstanding, the [sic] unanimously agreed to adopt the following resolutions . . . .").

outcome determinative."[84]  I parse the varying applicable categories of defendants below.

### a. Awards Granted by the Compensation Committee to the Outside Director Defendants

The Compensation Committee granted March 2020 Awards to each of the Outside Director Defendants, including themselves.  The applicable standard of review here is straightforward.  As *Investors Bancorp*[85] teaches, although the DGCL permits directors to fix their own compensation, such an action is necessarily self-interested, even when accomplished under a preexisting equity incentive plan.[86] Self-interested compensation decisions are subject to the entire fairness standard of review, unless  a "fully informed, uncoerced, and disinterested majority of stockholders" has approved the compensation decisions and therefore ratified them.[87]

Ratification of the underlying equity incentive plan (under which the directors made the awards) by stockholder vote may in some circumstances cleanse the award, but only where the actions of the directors applying the plan are, effectively, ministerial.[88]  Where "directors exercised discretion and determined the amounts and

---

[84] *Tornetta v. Musk*, 250 A.3d 793, 805 (Del. Ch. 2019).
[85] *Investors Bancorp*, 177 A.3d 1208.
[86] *Id.* at 1217.
[87] *See id.*
[88] *See generally id.*

terms of the awards after stockholder approval [of the equity incentive plan],"[89] and where a plaintiff has properly alleged a breach of fiduciary duty claim, stockholder approval of the equity incentive plan is insufficient to dislodge the entire fairness standard of review.[90] Where directors lack discretion entirely in making the awards, or where stockholders have approved the *specific* director awards, however, the stockholder approval trumps the directorial conflict.[91]

This stringent ratification requirement strikes a balance between "a decision by the stockholders to give the directors broad legal authority" and the stockholders' ability to "rely upon the policing of equity to ensure that that authority would be utilized properly."[92] The directors' self-interested actions of granting director compensation are therefore "twice-tested" for both legal authorization and equitable use of that same authorization.[93]

The Stock Incentive Plan at issue here, like the one in *Investors Bancorp*, affords the Compensation Committee considerable discretion in making awards.[94] It is not self-executing as was the stockholder-approved plan in *Kerbs v. California Eastern Airways, Inc.*, where the equity incentive plan listed grants of unissued stock

---

[89] *Id.* at 1222.
[90] *Id.* at 1223.
[91] *Id.* at 1222.
[92] *Sample v. Morgan*, 914 A.2d 647, 664 (Del. Ch. 2007).
[93] *Investors Bancorp*, 177 A.3d at 1222 (citing *Sample*, 914 A.2d at 672)).
[94] *See generally* SIP.

in specific amounts to named executives based on a mathematical formula.[95] The *Kerbs* plan left no room for discretionary decisions by the directors.[96] No such formula constrained the directors here. Similarly, the Stock Incentive Plan did not specifically enumerate the amount or total value of awards to be received by each director.[97]

Rather, the UHS Stock Incentive Plan sets an aggregate share limitation for the number of common stock shares that may be issued under the Plan, and a yearly award limit with respect to any individual employee.[98] So long as the Compensation Committee made grants consistent with those two limitations, the remainder of the awards-based decisions lay within the Compensation Committee's discretion. The stockholders, therefore, did not know "precisely what they [were] approving."[99] Accordingly, so long as the Plaintiff has pled sufficient facts to properly allege a breach of fiduciary duty claim against the Compensation Committee Defendants, the Outside Director Defendants' awards, at least, will be subject to entire fairness review.

When entire fairness is the applicable standard of review, this "conclusion normally will preclude dismissal of a complaint on a Rule 12(b)(6) motion to

---

[95] *Investors Bancorp*, 177 A.3d at 1222. (citing *Kerbs v. Cal. E. Airways, Inc.*, 90 A.2d 653 (Del. 1952)).
[96] *Id.* at 1218.
[97] *See generally* SIP.
[98] *Id.* § 3.
[99] *Stein*, 2019 WL 2323790, at *7 (quoting *Investors Bancorp*, 177 A.3d at 1222).

dismiss."[100]  At least at the pleadings stage, the reason for precluding dismissal is that "[a] determination of whether the defendant has met [its] burden will normally be impossible by examining only the documents the Court is free to consider on a motion to dismiss."[101]  Many other cases have followed this approach.[102]  Certain cases have granted motions to dismiss at the entire fairness stage, but generally where plaintiffs fail to allege any evidence of unfair process or price.[103]

The facts alleged in support of a lack of entire fairness here are not overwhelming, but are sufficient.  The pleading burden here is low, met so long as "some facts" implying lack of entire fairness have been alleged.[104]  The Complaint

---

[100] *Orman v. Cullman*, 794 A.2d 5, 21 n.36 (Del. Ch. 2002).

[101] *Id.*

[102] *Berteau v. Glazek,* 2021 WL 2711678, at *15 (Del. Ch. June 30, 2021) ("Even in a self-interested transaction . . . to state a claim, a shareholder must allege some facts that tend to show the transaction was not fair."); *In re CBS Corp. S'holder Class Action & Deriv. Litig.,* 2021 WL 268779, at *46 (Del. Ch. Jan. 27, 2021) (citations omitted); *Salladay v. Lev,* 2020 WL 954032, at *1 (Del. Ch. Feb. 27, 2020) ("It is nearly as axiomatic that, where entire fairness is the standard of review, a motion to dismiss is rarely granted, because review under entire fairness requires a record to be meaningful."); *see id.* at *8 (citations omitted) ("Where entire fairness is the standard of review, and where, as here, a plaintiff alleges facts making it reasonably conceivable that the transaction was not entirely fair to stockholders, the granting of a motion to dismiss is inappropriate, because the burden is on the defendants to develop facts demonstrating entire fairness."); *Klein v. H.I.G. Cap., L.L.C.,* 2018 WL 6719717, at *16 (Del. Ch. Dec. 19, 2018); *Hamilton Partners L.P. v. Highland Cap. Mgmt., L.P.*, 2014 WL 1813340, at *12 (Del. Ch. May 7, 2014); *Olenik v. Lodzinski*, 208 A.3d 704, 719 n.74 (Del. 2019); *Calma,* 114 A.3d at 589; *Sciabacucchi v. Liberty Broadband Corp.*, 2018 WL 3599997, at *15 (Del. Ch. July 26, 2018).

[103] *Solomon v. Pathe Commc'ns Corp.*, 1995 WL 250374, at *5 (Del. Ch. Apr. 21, 1995); *Monroe Cty. Emps.' Ret. Sys. v. Carlson*, 2010 WL 2376890, at *2 (Del. Ch. June 7, 2010); *Capella Holdings, Inc. v. Anderson,* 2015 WL 4238080, at *5 (Del. Ch. July 8, 2015) (citation omitted) (internal quotations omitted) ("Even when entire fairness scrutiny would otherwise seem to apply, a plaintiff must first make factual allegations in its complaint that, if proved, would establish that the challenged transactions are not entirely fair to state a claim.").

[104] *Stein*, 2019 WL 2323790, at *8.

24

pleads the following, implying lack of entire fairness: first, that the Compensation Committee disregarded certain considerations related to the emergence of the COVID-19 pandemic;[105] second, that the Company's peers even in its self-selected peer group received significantly less compensation;[106] third, that the Company, speaking through its CFO, considered the Company stock a "buy" even at a price over $20 in excess of the strike price established for the March 2020 Awards;[107] fourth, that at least one analyst identified a year-end price target for the Company of $127, using a model that purported to incorporate the effects of COVID-19;[108] and finally, that Alan Miller was "actively lobbying" the federal government via his activities with FAH, and therefore "knew or had reason to know of the timing and extent of federal grants," including relief that UHS might reasonably expect to receive.[109]

These facts are sufficient to raise a reasonably conceivable inference of an unfair transaction at the plaintiff-friendly pleading stage. This finding does not preclude the Compensation Committee Defendants from establishing that the March 2020 Awards were in fact entirely fair. But, at this stage, with sufficient pleading accomplished, the breach of fiduciary duty claim against the Compensation

---

[105] Compl. ¶ 73.
[106] *Id.* ¶¶ 77–78.
[107] *Id.* ¶¶ 63–66.
[108] *Id.* ¶ 65.
[109] *Id.* ¶ 73.

Committee Defendants for granting the March 2020 Awards to the Outside Director Defendants, including themselves, must go forward.

### b. Awards Granted by the Compensation Committee to the Controller Defendants

The analysis with respect to March 2020 Awards granted to the Controller Defendants proceeds in much the same way.[110] Although neither of the Millers is a director seated on the Compensation Committee, given their control block (which the Defendants describe in their public filings),[111] they are controlling stockholders and entire fairness applies to transactions whereby they receive a non-ratable benefit.[112] Here, in a transaction where Marc and Alan Miller each received compensation that was not shared equally among the stockholders—the March 2020 Awards—a non-ratable benefit exists, and therefore entire fairness is the standard of review.

This is true even despite the fact that the Millers are not "outside" directors,[113] and despite the fact that neither of Marc or Alan Miller sat on the Compensation Committee. Ultimately, they still stood on "both sides of [the] transaction."[114] In

---

[110] I note that the Complaint does not allege a cause of action for breach of duty against the Controller Defendants for influencing the March 2020 Awards, either to themselves or to others.

[111] *Id.* ¶¶ 15–16.

[112] *In re Ezcorp Inc. Consulting Agreement Deriv. Litig.*, 2016 WL 301245, at *11 (Del. Ch. Jan. 25, 2016); *Tornetta*, 250 A.3d at 807.

[113] *See, e.g.*, OB 6 (referring to the directors other than Alan and Marc Miller as the Company's "five outside directors").

[114] *Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983) (citation omitted).

*Kahn v. Tremont Corp.*, our Supreme Court held that entire fairness remains applicable in such a circumstance even when an independent committee—such as the Compensation Committee here—is utilized, "because the underlying factors which raise the specter of impropriety can never be completely eradicated and still require careful judicial scrutiny."[115] The underlying risk is that the independent committee members who pass upon the transaction in question—here the granting of equity awards—might "perceive that disapproval may result in retaliation by the controlling stockholder."[116] In *Tornetta v. Musk*, the Court observed that "in the CEO compensation context," the decisionmaker "knows full well the [controller] CEO is staying with the company whether [or not] his compensation plan is approved," furthering the risk of retaliation.[117] In *Tornetta,* the decisionmaker in question was the minority of ratifying stockholders,[118] but the principle applies equally, I think, to outside directors as decisionmakers, given the controlling stockholder's ability to elect directors.

The Compensation Committee Defendants' grant of March 2020 Awards to the Controller Defendants must be reviewed for entire fairness. As determined

---

[115] *Kahn v. Tremont Corp.*, 694 A.2d 422, 428 (Del. 1997) (citing *Weinberger*, 457 A.2d at 710).
[116] *Id.* at 428. This axiom applies forcefully here given the inference that Alan Miller, one of the two individuals making up the control block, appears to have sat in on the Compensation Committee's discussion and resolution with respect to the directors' receipt of the March 2020 Awards. *See supra* notes 44–46 and accompanying text.
[117] *See Tornetta*, 250 A.3d at 809.
[118] *See id.*

above, the Plaintiff has pled sufficient facts to impugn the entire fairness of the transaction at the pleading stage. The breach of fiduciary duty cause of action against the Compensation Committee Defendants for granting the March 2020 Awards to the Controller Defendants therefore survives the Motion to Dismiss.

### c. Awards Granted by the Compensation Committee to the Officer Defendants

I turn finally to the grants made to the Officer Defendants. As a matter of first priority, I note that despite Marc Miller's position as the Company President and CEO, he is excluded from the definition of Officer Defendants used in this Memorandum Opinion.[119] As such, my finding here will not apply to Marc Miller.

The standard of review applicable to the Officer Defendants' grants is the business judgment rule, unless the Plaintiff pleads (1) facts from which it may be reasonably inferred that the Board or Compensation Committee lacked independence (for example, if they were dominated or controlled by the individual receiving the compensation); or (2) facts from which it may be reasonably inferred that the Board or Compensation Committee, while independent, nevertheless lacked good faith in making the award.[120] I have found above that the Compensation Committee Defendants did not act in bad faith in making the awards. The Plaintiff has not pled facts relating to the Compensation Committee's lack of independence

---

[119] *See supra* notes 7 and 9 and accompanying text.
[120] *See Gagliardi v. TriFoods Int'l, Inc.*, 683 A.2d 1049, 1051 (Del. Ch. 1996).

28

for purposes of granting the March 2020 Awards. As such, the Compensation Committee Defendants' grant of the March 2020 Awards to the Officer Defendants is protected by the business judgment rule.

The business judgment rule can, of course, be dislodged by the successful pleading of a corporate waste cause of action.[121] As above, corporate waste has not been successfully pled here.

The Motion to Dismiss should be granted with respect to the Compensation Committee Defendants' grant of March 2020 Awards to the Officer Defendants.

### 3. Breach of Duty Against All Defendants for Accepting the March 2020 Awards

Separately from the *grants* of the March 2020 Awards, the Plaintiff has also pled a breach of fiduciary duty claim against all Defendants for *accepting* the March 2020 Awards.

In assessing the breach of fiduciary duty cause of action for acceptance of the challenged awards, I have found it helpful to begin with a definition of the duty of loyalty. The Delaware Supreme Court in *Guth v. Loft* stated that the duty of loyalty is

> a rule that demands of a corporate officer or director, peremptorily and inexorably, the most scrupulous observance of his duty, not only affirmatively to protect the interests of the corporation committed to his charge,

---

[121] *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 74–74 (Del. 2006) (citing *In re J.P. Stevens & Co. S'holders Litig.*, 542 A.2d 770, 780 (Del. Ch. 1988)).

29

but also to refrain from doing anything that would work injury to the corporation, or to deprive it of profit or advantage which his skill and ability might properly bring to it.[122]

The Plaintiff asserts that each of the Defendants named in this case has violated the duty of loyalty "by accepting the March 2020 Awards despite knowing that the March 2020 Awards were issued at strike prices that did not reflect the real value of the Company."[123] Put differently, the Plaintiff believes that the Defendants knew or should have known that the stock price of UHS on March 18, 2020 was not reflective of the actual value of the Company, and that, freighted with this knowledge, the Defendants should have rejected the March 2020 Awards.[124] The Plaintiff asks me to credit this inference given the procedural posture of the case.[125]

The Plaintiff cites two cases for the proposition that a director or officer "can breach fiduciary duties . . . by accepting compensation that is clearly improper,"[126] but there appears to be a relative lack of caselaw fleshing out what might constitute "clearly improper." The Plaintiff first points to *Howland v. Kumar*, in which the

---

[122] *Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. 1939).

[123] Compl. ¶ 124.

[124] The Complaint does not expressly plead *how* the Defendants accepted the March 2020 Awards, or whether the fact that they failed to reject the awards is to the Plaintiff's mind a sufficient basis for liability. Given that I am being asked to make an inferential leap regarding the mental state of the Defendants, the manner of so-called "acceptance" (whether formally enshrined in contract or whether simply granted by resolution) might have been of some probative import.

[125] AB 34 ("At this point in the proceedings, Plaintiff is entitled to the inference that the Individual Defendants knew or should have known these facts . . . .").

[126] *Howland v. Kumar*, 2019 WL 2479738, at *3 (Del. Ch. June 13, 2019) (internal quotations omitted) (citation omitted); *Pfeiffer v. Leedle*, 2013 WL 5988416, at *10 (Del. Ch. Nov. 8, 2013).

company's compensation committee, with knowledge that a significant patent was about to issue in favor of the company, "repriced" underwater stock options belonging to the company directors and officers.[127]   The *Howland* Court found it reasonably conceivable that all of the defendants except one had breached their duty of loyalty by "misusing corporate information and processes to benefit themselves" rather than the company.[128]   The Court treated the excluded defendant, Campisi, separately, stating that the complaint with respect to Campisi "provide[d] no basis from which to infer knowledge of the patent issuance prior to the Repricing, involvement in the decision to withhold news of the patent issuance, or involvement in the Repricing by Campisi," and that therefore there were no facts supporting any wrongdoing by Campisi.[129]   The breach of fiduciary duty cause of action as applicable to Campisi was dismissed.[130]

The second case cited by the Plaintiff is *Pfeiffer v. Leedle*, in which Leedle received stock options under an incentive plan.[131]   The pertinent plan prohibited any individual from receiving in excess of 150,000 stock options in a single calendar year.[132]   Leedle received over 400,000 options in 2011 and 285,000 options in

---

[127] *Howland,* 2019 WL 2479738, at *2.
[128] *Id.* at *4.
[129] *Id.* at *5.
[130] *Id.*
[131] *Pfeiffer*, 2013 WL 5988416, at *8.
[132] *Id.*

31

2012.[133]  The Court found that, "[a]s to the breach of fiduciary duty claim, the Complaint supports a reasonable inference that Leedle knew or should have known that his receipt of more than 150,000 Stock Options in a year violated the Plan."[134] The Court refused to dismiss the breach of fiduciary duty claim (and an unjust enrichment claim) against Leedle at the pleadings stage.[135]

The "clearly improper" standard, if standard it is, is nascent in its development.  Delaware courts have found that actions for breach of fiduciary duty for accepting compensation can survive a motion to dismiss where (1) the compensation awarded was *ultra vires,* and the recipients knew it, or (2) where compensation was repriced advantageously in light of confidential and sensitive business information which the recipients knew, and which they accordingly used to the company's detriment.  It is in way of this knowledge, in both cases, that the compensation was "clearly improper," and accepting such was redolent of scienter.

What is the standard that must be applied to the facts when considering whether such a breach of duty has been pled?  I conclude that what is required is a defendant's knowingly wrongful acceptance of compensation, and that the standard must be bad faith.  That is, there must be a sufficient pleading of scienter to support a bad faith claim, which serves as a claim based on breach of the duty of loyalty.

---

[133] *Id.*
[134] *Id.* at *10.
[135] *See id.*

But, as discussed above, there is an insufficient record to sustain even a claim that the Compensation Committee Defendants *making the awards* acted in bad faith, much less that the recipients' acceptance violated that standard. All that is alleged is that option awards were made at what proved to be the bottom of the market.

Unlike *Howard*, the instant case does not plead nonpublic facts known to the company and the Defendants that give rise to an inference of "clearly improper" compensation in the form of the March 2020 Awards. And unlike *Pfeiffer*, there is no allegation that the awards violated the Stock Incentive Plan, let alone that the Defendants were aware of the same.

With respect to the cause of action alleging breach of fiduciary duty by all Defendants for accepting the March 2020 Awards, the Motion to Dismiss is granted.[136]

*C. The Unjust Enrichment Claim*

For the third time in as many months, I am asked to dismiss an unjust enrichment claim as duplicative of another substantive claim in the action.[137] Here, unjust enrichment is pled, I note, against all award recipients. Given the fact that I have found that the fiduciary duty claim against the Compensation Committee

---

[136] Obviously, the claim against the Compensation Committee Defendants for accepting the self-dealing awards merges with the breach of duty claim against the Compensation Committee Defendants for making the awards.

[137] *See Lockton v. Rogers*, 2022 WL 604011, at *16–17 (Del. Ch. Mar. 1, 2022); *Sorenson Impact Found. v. Cont'l Stock Transfer & Tr. Co.*, 2022 WL 986322, at *13 (Del. Ch. Apr. 1, 2022); *see also* OB 40.

Defendants in part survives, and that I have *dismissed* the claims against the other award recipients, I do not find the unjust enrichment claim against all Defendants truly duplicative, at least of the remaining breach of duty claims.

The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law.[138] The case for unjust enrichment here, I think it is fair to state, is not strong. It relies upon much inference: that the Compensation Committee set its own awards in an unfair manner; that, to be consistent, the Compensation Committee set the other awards in the same wrongful manner; that the Company was impoverished thereby; and that the Defendants were thus enriched, unjustly.[139] At this stage, however, the Plaintiff is entitled to those inferences. She has, accordingly, stated a claim for unjust enrichment against all Defendants.

### III. CONCLUSION

The Motion to Dismiss is DENIED IN PART and GRANTED IN PART. For clarity, the Motion to Dismiss the cause of action for breach of fiduciary duty in granting the March 2020 Awards is DENIED as to the Compensation Committee

---

[138] *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).

[139] I note also that the Complaint does not fully specify how the awards were made, whether the Defendants entered into any contractual arrangement to receive the awards, and how that may affect any "enrichment" purportedly received by the Defendants. I need not decide this now, for the claim survives the pleadings stage regardless.

34

Defendants, insofar as it applies to awards made to the Outside Director Defendants and Controller Defendants. The Motion to Dismiss the cause of action for breach of fiduciary duty in granting the March 2020 Awards is GRANTED as to the Compensation Committee Defendants, insofar as it applies to awards made to the Officer Defendants.

The Motion to Dismiss the causes of action for breach of fiduciary duty for accepting the March 2020 Awards and for corporate waste is GRANTED.

The Motion to Dismiss the cause of action sounding in unjust enrichment is DENIED.

The parties should submit an appropriate form of order.